The judgment of the court was pronounced by
Eustis, C. J.
An act of the Legislature, passed on the 1st of June, 1846, provided for the trial of cases in which the judges of the district court in which *757 said cnuses are pending might be recused. It provides that the district judge shall refer such cases to the judge of an adjoining district, to whom the clerk of the court is bound to give notice that said cases are so referred; that the judge to whom said cases have been thus referred shall repair to the parish in which said cases are pending, and hold a special court for the trial of the same, and the judge is bound to order a special jury to be summoned for the trial of such causes if it be necessary. This act does not extend to the parish of New Orleans.
Henry Me Call and others have filed a petition in this court, in which they allege that they are parties to certain suits now pending, and at issue in the Fourth District Court for the parish of Ascension; that Albert Dujjield, the judge of said district court, had been engaged as counsel in said causes, and had recused himself in each of said causes, and that thereupon an order of court was entered referring said causes to the judge of the Sixth District Court — said Sixth District being adjacent to said Fourth District; that said judge of the Sixth District Court had been duly notified by the clerk of the Fourth District Court of the pendency of said suits in the parish of Ascension, of the recusation of said judge, and of the reference made of said suits, under the aet before recited, to him the said judge of the Sixth District. They further allege that it is the duty of the said judge to repair to said parish of Ascension, and to hold a session of the district court in the said parish for the trial of said several suits in which the said judge of the said Fourth District Court has recused himself; but that the said judge of the Sixth District refuses to comply with the notice and requisition thus made, and to hold a court in the said parish of Ascension for the trial of suits, by reason of which the petitioners are deprived of all means of having their suits adjudicated upon. They asked’for a rule on the judge of the Court of the Sixth District to show cause why a mandamus should not issue commanding him to hold a session of the District Court for the parish of Ascension for the trial of the said suits. The rule was granted at the relation of the petitioners as prayed for, and an answer has been filed by the district judge, in which his reasons for refusing-to try the suits are given at length.
The first inquiry to be made is, as to the power of this court to issue the mandamus commanding the district judge to proceed to try and determine these suits. It is conceded that appeals will lie in each of the suits to this court on final judgments rendered therein.
In the system of laws from which most of our remedial writs are derived, the writ of procedendo ad judicium issues out of the court of chancery, where the judges of any subordinate court delay the parties, for that they will not give judgment either on the one side or on the other, when they ought so to do. In such cases the writ of procedendo issues, commanding them in the king’s name to proceed to judgment, and upon further neglect or refusal, the judges of the inferior court may be punished for their contempt, by writ of attachment returnable in the king’s bench or common pleas. 3d. Blackston’s Com. 110i To the same end our Code of Practice, art. 837, and 838, provides that where the judges of inferior courts are guilty of a denial of justice or unreasonable delay in pronouncing judgment on causes before them, and where they refuse or neglect any of the duties required of them by law, or which may enable the superior courts to exercise their appellate jurisdiction, a mandamus may be issued, commanding said judges to render justice and to perform the duties of their office according to law.
It is obvious, that by the refusal of the district judge to adjudicate upon these cases, the parties are subjected to a denial of justice, and consequently this *758 court is ousted of its appeal, which the parties have severally a right to take on the decision of their cause adverse to them.
The jurisdiction of the Supreme Court under the Constitution of 1812 in civil cases, saving certain excepted cases, was the same as that of this court. 1 he jurisdiction of this court over cases of this class,, it is conceded, is appellate only; but it by no means follows that the court can only take cognizance of 'cases on formal appeals taken from final judgments. This court is bound to exercise every power incident to the appellate jurisdiction, under the forms established by legislative authority, which is necessary to enable it to exercise its appellate jurisdiction. In this case it can only be done by securing to the parties their right of appeal, which will be defeated unless final judgment be rendered in these suits. The State v. Bermudez, 14 L. R. 483.
In that case, the Supreme Court recommended the judge of the Court of Probates of New Orleans to take cognizance of an application for the appointment of an under-tutor, and to proceed to adjudicate thereupon. As far as our experience goes, we think the action of the Supreme Court in cases of this kind has been uniform since its establishment under the Constitution of 1812, ns well as the acquiescence of the district courts therein, without any exception.
It is contended that the statute requiring district judges to try cases of this class out of their respective districts is in conflict with the Constitution of 1845.
To determine on the constitutionality of laws, the question whether the legislative branch of the Government has or not transcended its powers, is the highest and most important act which the judiciary can be called upon to perform; and in the exercise of this responsible and delicate power, courts are bound to proceed with the greatest circumspection and deliberation. It has always been held that the presumption must always be in favor of the validity of laws, and that no law ought to be held unconstitutional, and consequently void and of no effect, unless its opposition to the Constitution be clear and free from doubt. It' must be conceded that there is no article of the Constitution with which this statute is clearly or directly in conflict; and its repugnancy to the Constitution is supported exclusively by implication. Without answering each argument of the respondent in detail, we think they will all be met by giving our views as to the judicial power as created by the Constitution.
The judicial power shall be vested in a Supreme Court, in district courts, and in justices of the peace. Art. 63. This certainly means that the whole judicial power — the power of determining all cases without exception or reserve- — is vested in these three classes of magistracy, and in establishing this power to provide for the determination of every possible case of injury, the Convention which framed the Constitution acted on the elementary principle in the English law, in reference to which our Constitutions in the United States have all been made, that every right when withheld must have a remedy, and eveiy wrong its proper redress.
The class of cases under consideration cannot be tried in the first instance by the Supreme Court nor by justices of the peace, according to express articles of the Constitution. Consequently they must be considered by the district court or not determined at all.
Judges of the district courts are selected from among the prominent members of the profession in the several districts. Having been actively engaged in practice previous to their appointment, the law has not considered it expedient that they should determine, as judges, the cases in which they have acted as counsel or attorney, and has provided for their trial by another judge. Judges *759 have their private affairs: they are sometimes creditors, sometimes debtors, and are liable to have suits themselves, and to have an interest in matters of litigation. To deprive judges of all remedy for the enforcement of their rights, and to exempt them from all recourse by creditors, or by the State in cases of offences, would be a strange state of things under a government of laws. We do not think the Constitution has created this deplorable condition of the administration of justice, but has vested the power of determining this class of cases in the district courts.
The first. Legislature which assembled under the Constitution, upon whom the duty devolved of carrying into effect its provisions, by making the laws necessary for its operation, undertook by this statute to give full effect to the judicial power. They considered that the power must be exercised with reference to those great principles of common right upon which the Government is based, and upon which the security of society itself depends. No man shall be a judge in his own cause; and the Legislature provided for the trial of causes in which the judge was considered by the laws of the land incapacitated from sitting, by directing them to be tried by a judge of the adjoining'district, and required him to try such causes in the courts in which they were pending.
We have said there was nothing in the Constitution with which this statute conflicts, that is, there is no aiticle in the Constitution which restricts the judicial action of a district judge to the district for which he was appointed, or prohibits the Legislature from imposing on district judges duties to be performed out of their district. The restriction, it is said, results from the articles of the Constitution creating- the district courts. They are as follows:
Art. 75. The first Legislature assembled under this Constitution shall divide the State into judicial districts, which shall remain unchanged for six years, and be subject to re-organization every sixth year thereafter. The number of districts shall not be less than twelve nor more than twenty. For each district one judge, learned in the law, shall be appointed, except in the districts in which the cities of New Orleans and Lafayette are situated, in which the Legislature may establish as may district judges as the public interest may require.
Art. 76. Each of the said judges shall receive a salary to be fixed by law, which shall not be increased or diminished during his term of office, and shall never be less than two thousand five hundred dollars annually. He must be a citizen of the United States, over the age of thirty years, and have resided in the State for six years next preceding his appointment, and have practiced law therein for the space of five years.
Art. 77. The judges of the district courts shall hold their offices for the term of six years. The judges first appointed shall be divided by lot into three classes, as nearly equal as can be; and the term of office of the judges of the first class shall expire at the end of two years, and of the second class at the end of four years, and the third class at the end of six years.
Art. 78. The district courts shall have original jurisdiction in all civil cases when the amount in dispute exceeds fifty dollars, exclusive of interest. In all criminal cases, and in all matters connected with successions their jurisdiction shall be unlimited.
No such restriction necessarily results from these articles, nor do we think any can be inferred from the 95th article, which has also been relied upon as creating it. It provides that, all civil officers of the State at large shall reside within the State, and all district or parish officers within their districts or parishes, and shall keep their offices at such places therein as may be required *760 by law. The article 115 renders it imperative on the Legislature to provide by I¡iw Í'01' a change of venue in civil and criminal cases. The Legislature accord»'«de the requisite iaw for this purpose. We think this article clearly refers to a class of cases other than those in which the judge is recused for one of the causes prescribed by law.
But there is an article of the Constitution which appears to us to remove any doubt on this subject. It pre-supposes the very case which is under consideration : that of additional duties or functions being imposed on the judges of the district court; and virtually recognizes the legislative power so to impose them. It provides that “no duties or functions shall ever be attached by law to the supreme or district court but such as are judicial. This seems to us to be the only restriction on the Legislature in carrying out the judicial power as to those courts, except those restrictions created in defining their jurisdiction.
We are of opinion that the statute, under consideration is not unconstitutional; on the contrary, that it is a necessary and proper mode of giving effect to the judicial powers vested by the Constitution, in order to secure to the citizen a fair and impartial trial before a judge without interest or undue bias ; and that it is the duty of the judge of the Sixth District to hold the court in the parish of Ascension, as required, and to hear and determine the coses of the several relators, to the end that if need there be an appeal may be taken to this court. We think the relators have made out cases in which, without the relief by them asked, they are left entirely without remedy, by reason of a denial of justice, and that it is the duty of this court to command the judge of the Sixth District to proceed to the trial of the several causes enumerated in the relators’ petition.
The rule is therefore made absolute.